ORIGINAL

FLORENCE T. NAKAKUNI #2286
United States Attorney
District of Hawaii

LESLIE E. OSBORNE, JR. #3740
Chief, Criminal Division

LAWRENCE L. TONG     #3040
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii  96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail:  Larry.Tong@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 09 2012

at [10] o'clock and [70] m [A] .M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   vs.<br><br>LEATRICE LEHUA HOY   (04),<br><br>        Defendant. | CR. NO. 11-00503-4 JMS<br><br>MEMORANDUM OF PLEA AGREEMENT<br><br>Date:  May 9, 2012<br>Time:  9:30 A.M.<br>Judge: J. Michael Seabright |

MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the UNITED STATES OF AMERICA, by its attorney, the United States Attorney for the District of Hawaii, and the Defendant, LEATRICE LEHUA HOY, and her attorney, Alvin K. Nishimura, Esq., have agreed upon the following:

      1.   Defendant acknowledges that she has been charged in a Superseding Indictment with conspiracy and mail fraud

offenses, violations of Title 18, United States Code, sections 371 and 1341. Defendant further acknowledges that the Superseding Indictment includes a Forfeiture Allegation seeking the forfeiture of certain property pursuant to Title 18, United States Code, section 981(a)(1)(C) and Title 28, United States Code, section 2461(c).

    2. Defendant has read the charges against her contained in the Superseding Indictment, and those charges have been fully explained to her by her attorney.

    3. Defendant fully understands the nature and elements of the crimes with which she has been charged.

    4. Defendant will enter a voluntary plea of guilty to count 1 of the Superseding Indictment, which charges her with conspiring to commit mail fraud, and to make and use fictitious obligations, and agrees to forfeit her interest in certain currency, funds seized from bank accounts, and gold and silver collectible coins as property constituting or derived from proceeds obtained as a result of the commission of such offense. The United States agrees to move for a dismissal of the remaining counts of the Superseding Indictment at the time of sentencing.

    5. Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6. Defendant enters this plea because she is in fact guilty of conspiring to commit mail fraud, and to make and use fictitious obligations as charged in count 1 of the Superseding Indictment, and agrees that this plea is voluntary and not the result of force or threats.

7. Defendant understands that the penalties for the offense to which she is pleading guilty include a maximum term of imprisonment of five (5) years, a fine of up to $250,000, plus a term of supervised release of not more than three (3) years, and the forfeiture of currency, property and items which constitute proceeds, or were derived from, proceeds traceable to such offense.

The Court must also award restitution under Title 18, United States Code, Section 3663A to all persons and entities that suffered a pecuniary loss as a result of the criminal conduct to which she is pleading guilty. Defendant understands that the Court will determine the amounts of restitution to be ordered, as well as the persons and entities entitled to such restitution, with the assistance of the United States Probation Office.

In addition, the Court must impose a $100 special assessment as to each count to which the Defendant is pleading guilty. Defendant agrees to pay $100 for each count to which she is pleading guilty to the District Court's Clerk's Office, to be

credited to said special assessments, before the commencement of any portion of sentencing. Defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option.

Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including her attorney or the district court, can predict to a certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is her automatic removal from the United States.

8. Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which defendant is pleading guilty:

<u>Conspiracy to Commit Mail Fraud and to Make
and Use Fictitious Obligations</u>

In or about March 2008, defendant and her husband attended seminars conducted by a Maui-based group known as the

Hawaiiloa Foundation ("HLF"). HLF was operated primarily by Mahealani Ventura-Oliver and John Oliver. HLF offered to teach the public about Hawaiian history and property rights. At public seminars, Ventura-Oliver described her background and studies in Hawaii property law. HLF also offered private meetings with seminar participants, during which Mahealani Ventura-Oliver, John Oliver and Pilialoha Teves promoted a debt assistance program which they claimed could eliminate mortgage, credit card and other debt. HLF's customers were told that each individual has an account at the United States Treasury that could be accessed through various "bonds," "promissory notes" and other documents purportedly issued by the United States Treasury or the State of Hawaii. In return for the payment of a "kokua," or fee of approximately $1,500 to $10,000, HLF prepared bonds and other documents which they claimed could be used to pay off their customers' mortgages and other debts.

In March 2008, defendant and her husband placed their residence into the HLF program. Defendant and her husband thereafter tried to pay their mortgage with Countrywide Home Loans using bonds and documents prepared by Mahealani Ventura-Oliver and HLF. Countrywide advised defendant and her husband that the documents were not acceptable as payment for their debt. When she received documents from Countrywide, defendant spoke with Ventura-Oliver, who persuaded her that the process was

Hawaiiloa Foundation ("HLF"). HLF was operated primarily by Mahealani Ventura-Oliver and John Oliver. HLF offered to teach the public about Hawaiian history and property rights. At public seminars, Ventura-Oliver described her background and studies in Hawaii property law. HLF also offered private meetings with seminar participants, during which Mahealani Ventura-Oliver, John Oliver and Pilialoha Teves promoted a debt assistance program which they claimed could eliminate mortgage, credit card and other debt. HLF's customers were told that each individual has an account at the United States Treasury that could be accessed through various "bonds," "promissory notes" and other documents purportedly issued by the United States Treasury or the State of Hawaii. In return for the payment of a "kokua," or fee of approximately $1,500 to $10,000, HLF prepared bonds and other documents which they claimed could be used to pay off their customers' mortgages and other debts.

In March 2008, defendant and her husband placed their residence into the HLF program. Defendant and her husband thereafter tried to pay their mortgage with Countrywide Home Loans using bonds and documents prepared by Mahealani Ventura-Oliver and HLF. Countrywide advised defendant and her husband that the documents were not acceptable as payment for their debt. When she received documents from Countrywide, defendant spoke with Ventura-Oliver, who persuaded her that the process was

legitimate and urged her to send additional bonds to Countrywide in payment of their debt.

In July 2008, and continuing until April 2009, defendant worked for HLF. Defendant assisted Ventura-Oliver by obtaining information from HLF customers about their debts, collecting their fees, and preparing bonds and other documents from computer templates. At Ventura-Oliver and Teves' direction, defendant advised HLF's customers to send, via United States mail, the bonds and documents to the United States Treasury, the Federal Reserve Bank, the State of Hawaii and their creditors, as a purported means of paying their existing debts, and to stop mortgage foreclosure and debt collection efforts. HLF's customers were told the mailings were an integral part of the process, as the bonds only became effective when the debtors received them.

On November 17, 2008, defendant read a newspaper article in which the Federal Bureau of Investigation warned the public that the bonds were not legitimate financial instruments. On the following day, defendant assisted Ventura-Oliver and Teves in shredding documents that had been prepared by HLF. Defendant thereafter continued to work at HLF, collected fees from HLF customers, and prepared bonds and documents that she knew were not legitimate and could not be used to pay debts.

Forfeiture Admissions

Between November 17, 2008 and the end of the conspiracy, the time during which defendant was involved in the conspiracy, she and her co-defendants obtained a total of $89,912 from customers seeking to use HLF's program. HLF used a portion of the fees to pay defendant for her work. Defendant and her husband, Petro Hoy, put the money received from HLF into First Hawaiian Bank account number xxxx5438, held in the name of Petro T. Hoy Trust. On April 7, 2009, $14,679.30 was seized from that bank account pursuant to a federal seizure warrant.

In late April 2009, John Oliver had another individual give to defendant and her husband collectible coins and $40,689 in United States currency for safe-keeping. On April 30, 2009, defendant and her husband turned over such currency and coins to agents of the Federal Bureau of Investigation and the Internal Revenue Service.

Defendant admits that the $14,679.30 seized from the First Hawaiian Bank account, the collectible coins and the $40,689 all constitute proceeds of, or were derived from proceeds traceable to, the conspiracy offense to which she is pleading guilty.

9. Defendant agrees to immediately and voluntarily forfeit to the United States all of her right, title, and interest in all of the property identified in the Forfeiture

Allegation of the Superseding Indictment ("Subject Property"), to consent to the imposition of a personal money judgment in the amount of $89,912 against her, jointly and severally with any other defendants convicted of count 1 of the Superseding Indictment, and to take all necessary actions to expeditiously implement this forfeiture and to pass clear title to the Subject Property to the United States. These actions on defendant's part include, but are not limited to, surrender of title, and the signing of a Preliminary Order of Forfeiture, a Final Order of Forfeiture, and any other relevant documents necessary to effect transfer of title to the United States.

Defendant waives all interest in, and claims to, the Subject Property, and hereby consents to the forfeiture of such property to the United States. Defendant knowingly and voluntarily waives any claim or defense she may have under the Eighth Amendment to the United States Constitution, including any claim of excessive fine or penalty with respect to the forfeited property. Defendant knowingly and voluntarily waives her right to a jury trial on the forfeiture of such property. The forfeiture may be processed through administrative, civil judicial, or criminal proceedings in the Government's sole discretion. Defendant hereby waives, and agrees to the tolling of, any rule or provision of law limiting the time for commencing, or providing notice of, any administrative or civil

judicial forfeiture proceeding with respect to the Subject Property, including but not limited to, such limitations contained in 18 U.S.C. § 983, 19 U.S.C. § 1621, and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  Defendant agrees to consent promptly upon request to the entry of any orders deemed necessary by the Government or the Court to complete the forfeiture and disposition of the Subject Property.  Defendant waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of forfeiture in the charging instrument, announcement of forfeiture in defendant's presence at sentencing, and incorporation of the forfeiture in the judgment.  If the Government elects to conduct the forfeiture criminally, defendant understands that the forfeiture of the Subject Property, and the imposition of the personal money judgment, will be part of the sentence imposed upon defendant in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), during the change of plea hearing.  Pursuant to Rule 32.2(b)(4), defendant will promptly consent to the preliminary order of forfeiture becoming final as to defendant before sentencing if so requested by the Government to do so.

Defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive her,

notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of the Subject Property pursuant to this agreement shall be determined as if defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

Defendant represents and warrants to the government that she has no interest, either direct or indirect, whether held in her own name, or in the name of another person or entity, in any other property, real or personal, that would be subject to forfeiture on the basis of violations covered by this Agreement. Defendant understands and acknowledges that the government is relying upon defendant's representations in entering into this Agreement.

Defendant further agrees that the forfeiture of the Subject Property shall not be treated as satisfaction of any fine, restitution, reimbursement of cost of imprisonment, or any other monetary penalty this Court may impose upon defendant in addition to the forfeiture.

10. Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charges to which the Defendant is pleading guilty adequately reflect the seriousness of the actual offense

behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

11. Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which the Defendant is pleading guilty adequately reflect the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

12. Pursuant to CrimLR32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of Defendant in connection with this matter:

    a. The base offense level for the conspiracy offense to which defendant is pleading guilty is six (6). See United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1.

    b. Defendant should be held accountable for all losses caused by the conspiracy after November 18, 2008, the date on which she learned HLF's program was fraudulent. The parties agree that the loss after that date, measured by fees paid by HLF's customers, was more than $70,000 but less than $120,000, which results in an eight (8) level increase to the base offense level. See U.S.S.G. § 2B1.1(b)(1)(E).

    c. The United States Attorney agrees that

defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to Defendant. Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in sentencing offense level pursuant to U.S.S.G. § 3E1.1(b)(2), if defendant is otherwise eligible. Defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to argue to the contrary in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either the probation office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

13. The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.

14. Pursuant to Section 6B1.4 of the Sentencing Guidelines, the parties are not presently aware of any facts which are disputed for sentencing purposes.

15. The Defendant is aware that she has the right to appeal the sentence imposed under Title 18, United States Code,

Section 3742(a). Defendant knowingly waives the right to appeal, except as indicated in subparagraph "b" below, any sentence within the maximum provided in the statute(s) of conviction or the manner in which that sentence was determined on any of the grounds set forth in Section 3742, or on any ground whatever, in exchange for the concessions made by the prosecution in this plea agreement.

    a. The Defendant also waives her right to challenge her sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

    b. If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the Defendant, the Defendant retains the right to appeal the portion of her sentence greater than specified in that guideline range and the manner in which that portion was determined under Section 3742 and to challenge that portion of her sentence in a collateral attack.

    c. The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of

the grounds stated in Title 18, United States Code, Section 3742(b).

16. The Defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines. The Defendant agrees that there is no promise or guarantee of the applicability or nonapplicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

17. The Defendant understands that pursuant to Guideline 6B1.1(c), this Agreement cannot be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary pursuant to Guideline 6A1.1. The Defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charges adequately reflect the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

18. Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a. If Defendant persisted in a plea of not guilty to the charges against her, she would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by a judge sitting without a jury. The Defendant has a

right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the Defendant, the prosecution and the judge all must agree that the trial be conducted by the judge without a jury.

    b. If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the Defendant is presumed innocent, and that it could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt.

    c. If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the Defendant's guilt beyond a reasonable doubt.

    d. At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the Defendant. Defendant would be able to confront those prosecution witnesses and her attorney would be able to cross-examine them. In turn, Defendant could present

witnesses and other evidence on her own behalf. If the witnesses for the Defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court.

    e. At a trial, the Defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify.

    19. Defendant understands that by pleading guilty, she is waiving all of the rights set forth in the preceding paragraph. Defendant's attorney has explained those rights to her, and the consequences of the waiver of those rights.

    20. Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce Defendant to plead guilty.

    21. Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto. The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

    22. Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of Defendant's conduct regarding the

charges against her, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

23. The Defendant agrees that she will fully cooperate with the United States.

 a. She agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests her to testify, including, but not limited to, any grand jury proceedings, trial proceedings involving codefendants and others indicted later in the investigation, and related civil proceedings.

 b. Defendant agrees to be available to speak with law enforcement officials and to representatives of the United States Attorney's Office at any time and to give truthful and complete answers at such meetings, but she understands she may have her counsel present at those conversations, if she so desires.

 c. Defendant agrees she will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crimes in this Indictment or any subsequent charges related to this investigation, at which the prosecution requests her to testify.

 d. Pursuant to § 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating

17

information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under § 1B1.8(b) of the Sentencing Guidelines.

24. In the event that the Defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after Defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case in chief in the trial of the Defendant in this matter. Defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

25. Pursuant to Guideline Section 5K1.1 and Rule 35(b), Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the Defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense. Defendant understands that:

    a. The decision as to whether to make such a request or motion is entirely up to the prosecution;

    b. This Agreement does not require the prosecution to make such a request or motion.

      c.  This Agreement confers neither any right upon the Defendant to have the prosecution make such a request or motion, nor any remedy to Defendant in the event the prosecution fails to make such a request or motion.

      d.  Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines.

DATED:  Honolulu, Hawaii, __May 9, 2012__.

AGREED:

FLORENCE T. NAKAKUNI  
United States Attorney  
District of Hawaii

_____  
LESLIE E. OSBORNE, JR.  
Chief, Criminal Division

_____  
LAWRENCE L. TONG  
Assistant U.S. Attorney

_____  
LEATRICE LEHUA HOY  
Defendant

_____  
ALVIN K. NISHIMURA, ESQ.  
Attorney for Defendant

United States v. Leatrice Lehua Hoy  
Cr. No. 11-00503-4 JMS  
"Memorandum of Plea Agreement"